J-S44004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID ALLEN YUHOUSE, II, | |
| Appellant | No. 1035 WDA 2013 |

Appeal from the Judgment of Sentence Entered June 21, 2013
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0001376-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 22, 2014**

Appellant, David Allen Yuhouse, II, appeals from the judgment of sentence of 11½ - 23 months' imprisonment.  Appellant challenges the sufficiency of the evidence introduced at his trial.  After careful review, we affirm.

Appellant proceeded to a jury trial on May 9, 2013.  The facts adduced at trial were as follows:

> On March 11, 2012[,] at approximately 3:45 a.m.[,] [Appellant] was driving his automobile in the northbound lane of State Route 119 in Upper Tyrone Township, Fayette County, Pennsylvania[,] when he rear-ended a white Chevrolet van. [Appellant's] speed at the time of the collision was not established at trial.  However, the force of the impact caused the van to tumble numerous times that morning.
>
> Benjamin and Donna Green owned the van[,] and[,] along with their friend Bonnie Urbaneck[,] they were delivering Sunday newspapers as they had many times prior.  Ben was driving.  At trial, Ben recalled that his van was moving at a speed of 35

[miles per hour] because they were passing through a construction zone….

Both Ben and Donna were ejected from the van. Donna awoke and found herself in the middle of the road…. She immediately recognized her husband beneath [Appellant's] burning car. He was unconscious and had suffered a broken back….

Once Donna pulled Ben out from under [Appellant's] car, [Appellant] told her he was "so sorry" for crashing into their van and that he was on his cell phone when the incident occurred. Thereafter, all of the parties were transported to Frick Hospital.

At approximately 5:08 a.m.[,] Trooper David J. Hamer appeared at the hospital and spoke with [Appellant]. As the two discussed the incident, the trooper detected a strong odor of alcohol coming from [Appellant]. He also noticed [Appellant's] bloodshot eyes and slurred speech. Consequently, [Appellant] was read his **O'Connell**[1] warnings and then submitted to a chemical blood test. [Appellant's] blood alcohol content was determined to be .116%.

Trial Court Opinion (TCO), 12/9/13, at 2 – 3 (citations to the record omitted). At the conclusion of Appellant's trial, the jury found him guilty of two counts of aggravated assault by vehicle while driving under the influence, and one count each of driving under the influence, following too closely, driving at unsafe speed, and careless driving. On June 21, 2013, Appellant was sentenced to two concurrent terms of 11½ - 23 months'

_____

[1] **See Commonwealth, Dept. of Trans., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873, 878 (Pa. 1989) (holding "where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.")

incarceration. He filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P 1925(b).

Appellant now presents the following questions for our review:

1. Did the trial court err in denying [Appellant's] motion for judgment of acquittal where the Commonwealth failed to prove every element of the crime of driving under the influence[,] as there was a gross lack of testimony as to the proper chain of custody, and procedures regarding the handling of the blood sample alleged to be Appellant's?

2. Did the trial court err in denying [Appellant's] motion for judgment of acquittal when basing that denial on unmade inferences about the proper chain of custody of [Appellant's] blood sample when [Appellant's] only stipulation was to the results of the test performed?

Appellant's brief at 6 (unnecessary capitalization omitted).

A defendant may challenge the sufficiency of the evidence to sustain a conviction of an offense charged by motion for judgment of acquittal at the close of the Commonwealth's case. Pa.R.Crim.P. Rule 606.

> In reviewing a refusal to arrest judgment, we must consider whether the evidence was sufficient to uphold the verdict of the trial court. We must accept all the evidence and all reasonable inferences which may be drawn from that evidence upon which the fact finder could have based its verdict. If the evidence viewed in the light most favorable to the verdict winner is not sufficient to establish guilt[] beyond a reasonable doubt of the crime charged, then the motion should have been granted.

> Further, our standard of review for sufficiency of the evidence claims is well settled:

>> []In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where

- 3 -

the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on []more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.[]

Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed.

*Commonwealth v. McFadden*, 850 A.2d 1290, 1292 – 1293 (Pa. Super. 2004) (internal citations omitted).

In the instant case, Appellant was convicted of aggravated assault by vehicle while driving under the influence, defined as follows in 75 Pa.C.S. § 3735.1(a):

Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

Appellant was also convicted of driving under influence of alcohol or controlled substance, as defined in 75 Pa.C.S. § 3802(b):

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

Appellant argues that the evidence offered at his trial was insufficient to establish the alcohol concentration in his blood, as required to sustain his

conviction for aggravated assault by vehicle while driving under the influence. Specifically, Appellant claims that the Commonwealth failed to offer sufficient evidence establishing that the sample tested to determine Appellant's blood alcohol content was actually his blood. This claim is meritless.

Trooper David Hamer testified that he watched as a technician drew two vials of Appellant's blood. N.T., 5/9/13, at 70. The technician packaged the vials in Trooper Hamer's presence, and gave the package to Trooper Hamer. *Id.* at 71. Trooper Hamer locked the package in the trunk of his police cruiser. *Id.* He removed the package when he returned to the police barracks. *Id.* Trooper Hamer signed the blood into the property room, and requested that the blood be sent to a laboratory for chemical testing. *Id.* The packaged blood was assigned a property record number, and placed in the barrack's property room. *Id.* Subsequently, Trooper Hamer received a report from a forensic scientist stating that she had tested the blood. *Id.* at 72. At trial, Appellant stipulated that "Lisa Moore[,] … Forensic Scientist II from the Greensburg Regional Crime Laboratory[,] tested the blood provided to her by the Pennsylvania State Police allegedly from [Appellant]," and the alcohol content of that blood was .116 percent. *Id.* at 62 - 63.

Viewing this evidence submitted in the light most favorable to the Commonwealth, the evidence was sufficient to establish that Appellant's blood alcohol level was .116 percent. The record supports the trial court's finding of an unbroken chain of custody while the blood was in Trooper

Hamer's possession. Appellant argues that the evidence fails to establish the blood remained "intact and unharmed." Appellant's brief at 11 – 12. However, Trooper Hamer testified that the sealed blood samples remained secured in the trunk of his cruiser until he returned to the police barracks, where the sample was assigned an identification number and placed in the property room. There is nothing in the record that suggests the blood was improperly handled or tampered with while in Trooper Hamer's possession.[2]

With regard to the blood sample's transfer to the laboratory for chemical testing, Appellant stipulated to this portion of the sample's chain of custody. Appellant claims, in the second issue he raises before this Court, that the trial court erred in "relying on unmade inferences about the proper chain of custody of [Appellant's] blood sample." Appellant's brief at 6. He contends that he merely stipulated to the results of the blood test, not that the sample was Appellant's blood or that the testing was properly performed. This contention is not supported by the record.

At trial, the Commonwealth produced the forensic scientist who tested Appellant's blood sample. When she was about to testify, Appellant's

---

[2] To the extent that Appellant challenges the credibility of the evidence, such a claim goes to the weight of the Commonwealth's evidence, and not its sufficiency. **See Commonwealth v. Wilson**, 825 A.2d 710, 713 – 714 (Pa. Super. 2003). Appellant has not raised a challenge to the weight of the evidence.

counsel addressed the trial court: "Your Honor, before she begins, we'll stipulate to the blood alcohol as being .116 if you want that stipulation you don't have to have her testify." N.T., at 62. The Commonwealth agreed to the stipulation, and clarified, as we have noted, *infra*, that the testimony they would have offered was that "Lisa Moore[,] … Forensic Scientist II from the Greensburg Regional Crime Laboratory[,] tested the blood provided to her by the Pennsylvania State Police allegedly from [Appellant]," and the alcohol content of that blood was .116 percent. *Id.* at 62 - 63. Appellant's counsel then said, "We will so stipulate, Your Honor." *Id.* Thus, our review of the record shows that Appellant did not stipulate solely to the blood alcohol content of the sample; rather, Appellant stipulated to the fact that the blood sample in question was alleged to be his, that the blood in question was tested at the Greensburg Regional Crime Laboratory by Lisa Moore, and that the sample was provided to the laboratory from the State Police.

Trooper Hamer then testified that he received a report from the Greensburg Regional Crime Lab signed by Lisa Moore stating that she had tested the blood sample he had placed in the property room, and she had provided him with the results of that test. *Id.* at 71 – 72. As such, we conclude the record was sufficient to establish Appellant's blood alcohol content; accordingly, the evidence was sufficient to sustain Appellant's conviction for aggravated assault by vehicle while under the influence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2014